## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

EVA VILLASENOR, INDIVIDUALLY AND ON
BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES
OF JOSE VILLASENOR, DECEASED
AND EDWARD VILLASENOR INDIVIDUALLY          PLAINTIFFS

VS.                                         CIVIL ACTION: _____
                                                    JURY DEMAND

U.S. CARGO, INC. and RONALD ORELUS           DEFENDANTS

## COMPLAINT

COME NOW, the Plaintiffs, Eva Villasenor, individually and on behalf of all wrongful death beneficiaries of Jose Villasenor, deceased, and Edward Villasenor, individually, by and through their attorneys, and file this Complaint against the Defendants, U.S. Cargo and Ronald Orelus; and in support of this suit, Plaintiffs would show the following facts, to-wit:

## PARTIES

1. Plaintiff, Eva Villasenor, is an adult resident citizen of Marshall County, Mississippi, whose residential address is 19 Embry Road, Byhalia, Mississippi. She is the widow of Jose Villasenor, who is deceased as a result of the incident giving rise to this lawsuit. Mrs. Villasenor has the exclusive right to bring this action on behalf of the Wrongful Death Beneficiaries of Jose Villasenor, under Tenn. Code Ann. §20-5-106 (2023).

2. Plaintiff Edward Villasenor is an adult resident citizen of Marshall County, Mississippi, whose residential address is 19 Embry Road, Byhalia, Mississippi 38611. He is the biological son of Jose Villasenor, deceased.

1

3. Defendant, U.S. Cargo, Inc. ("U.S. Cargo") is a Pennsylvania Corporation, with its principal place of business at 406 E. Pennsylvania Blvd, Feasterville-Trevose, PA 19053-7847, and may be served in the time and manner prescribed by statute.

4. Defendant, Ronald Orelus, is an adult resident citizen of Pennsylvania, who may be served at his principal residence 835 E. Chillen Avenue Fl 2nd, Philadelphia, PA 19138 or wherever he may be found.

## JURISDICTION AND VENUE

5. This civil action arises out of the negligent acts and omissions of Defendants committed in Memphis, Tennessee. Therefore, venue is proper in the Western District of Tennessee.

6. Jurisdiction in this Court is proper under 28 U.S.C. § 1332 as there is complete diversity among the parties in this case and the amount in controversy exceeds $75,000.

7. A separate action for determination of heirship has been previously filed in the Chancery Court of Marshall County, Mississippi by Eva Villasenor under Cause# 47CH1:23-CV-139-LL which has exclusive jurisdiction over the estate of Jose Villasenor, deceased, as he was a resident of Marshall County, Mississippi for more than six months prior to his death and shall maintain jurisdiction for determination of wrongful death beneficiaries and over the distribution of any proceeds from this action.

## FACTS

8. On or about January 22, 2023, Jose Villasenor was traveling southbound on Lamar Avenue when a Freightliner semi-truck and tractor driven by Defendant Ronald Oreleus and owned by Defendant, U.S. Cargo, Inc. crossed over into his lane of travel striking his vehicle resulting in critical injuries and eventually his death on January 23, 2023.

9. While responsible for the management and control of his vehicle, Ronald Orelus was careless, negligent, grossly negligent and reckless, by leaving his lane of travel and traveling the wrong way into the lane Mr. Villasenor was lawfully occupying.

10. At the abovementioned time and place, Ronald Orelus, was acting within the course and scope of his employment with U.S. Cargo, Inc. and was acting in furtherance of the business of U.S. Cargo, Inc., who was the owner of the truck involved in the collision and operated by Ronald Orelus on the date of the collision.

11. U.S. Cargo, Inc., is liable for the negligent acts of its employee, Ronald Orelus, under the common law doctrine of *respondeat superior*.

12. Furthermore, as the registered owner of the vehicle which struck Jose Villasenor, all negligent acts of Ronald Orelus are imputed to U.S. Cargo, Inc. under Tenn. Code Ann. §55-10-311 and §55-10-312.

13. In no way was Jose Villasenor involved in actions which contributed to the cause of the collision.

## NEGLIGENCE OF RONALD ORELUS

14. Disregarding his duty as a motorist, Ronald Orelus was guilty of one or more of the following:

   a. Negligently failing to use that degree of care und caution in the operation of the vehicle as was required of a reasonable and prudent person under the same or similar circumstances existing at the time and place of the aforementioned collision;

   b. Negligently failing to use that degree of care and caution in the operation of a commercial vehicle as was required of a reasonable and prudent commercial

3

   truck operator under the same or similar circumstances existing at the time and place of the aforementioned collision;

c. Negligently failing to maintain proper control of the vehicle under all existing circumstances;

d. Negligently failing to devote full time and attention to the operation of his vehicle;

e. Negligently failing to use reasonable care to avoid injury to others while operating a motor vehicle;

f. Negligently failing to maintain his lane of travel;

g. Negligently violating minimum safe driving skills and practices involving visual search, space management, speed management, hazard perception, health of driver, and fatigue and awareness:

h. Other acts of negligence which may be presented at trial.

15. Plaintiffs charge and allege that at the time of the wreck in question the following statutes of the State of Tennessee were in full force and effect and were violated by Defendant Orelus constituting negligence per se, and which are imputed to Defendant U.S. Cargo, Inc. to-wit:

 a. **Section 55-8-103. Required obedience to traffic laws**

 It is unlawful and, unless otherwise declared in this chapter and chapter 10, parts 1-5 of this title with respect to particular offenses, it is a Class C misdemeanor, for any person to do any act forbidden or fail to perform any act required in this chapter and chapter 10 of this title.

 b. **Section 55-8-136. Due care**

4

(b)  Notwithstanding any speed limit or zone in effect at the time, or right of way rules that may be applicable, every driver of a motor vehicle shall exercise due care to avoid colliding with any other motor vehicle, either being driven or legally parked, upon any roadway, or any road sign, guard rail or any fixed object legally placed within or beside the roadway right of way, by operating such motor vehicle at a safe speed, by maintaining a safe lookout, by keeping such motor vehicle under proper control and by devoting full time and attention to operating such motor vehicle under the existing circumstances to avoid endangering life, limb or property.

c. **Section 55-10-202. Operating a vehicle contrary to law**

It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require or knowingly to permit the operation of such vehicle upon a highway in any manner contrary to law. A violation of this section is a Class C misdemeanor.

d. **Section 55-10-205. Reckless driving**

Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving.

16. Plaintiffs further allege that the Defendant Orelus was likewise guilty of negligence in that he violated the following traffic ordinances of the City of Memphis, each and every one of which were in full force and effect at the time and place of said collision constituting negligence per se, and imputed to Defendant U.S. Cargo, Inc. to-wit:

a. **Section 11-16-2:     Duty to devote full time attention to operating vehicle**

>   It shall be unlawful for a driver of a vehicle to fail to devote full time and attention to operating such vehicle when such failure, under the then existing circumstances, endangers life, limb or property.

   b. **Section 11-16-44: Reckless Driving;**

   >   (a) Any person who drives any vehicle in a willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

17.   Plaintiffs further charge and aver that at the time of the wreck in question, the following rules and regulations of the Federal Motor Carrier Safety Act were in full force and effect and were violated by Defendant Orelus constituting negligence per se, which are imputed to Defendant U.S. Cargo, Inc. to-wit:

   a. **§392.1  Scope of the rules in this part.**

   >   (a) Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part.

   b. **§392.2  Applicable operating rules.**

   >   Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulations must be complied with.

   c. **§383.110 General requirement.**

All drivers of CMVs must have the knowledge and skills necessary to operate a CMV safely as contained in this subpart. The specific types of items that a State must include in the knowledge and skills tests that it administers to CDL applicants are included in this subpart.

d. **§383.111 Required knowledge.**

(a) All CMV operators must have knowledge of the following 20 general areas:

(1) *Safe operations regulations.* Driver-related elements of the regulations contained in parts 391, 392, 393, 395, 396, and 397 of this subchapter, such as:

(i) Motor vehicle inspection, repair, and maintenance requirements;

(ii) Procedures for safe vehicle operations;

(iii) The effects of fatigue, poor vision, hearing impairment, and general health upon safe commercial motor vehicle operation;

(iv) The types of motor vehicles and cargoes subject to the requirements contained in part 397 of this subchapter; and

(v) The effects of alcohol and drug use upon safe commercial motor vehicle operations.

(2) *Safe vehicle control systems.* The purpose and function of the controls and instruments commonly found on CMVs.

(3) *CMV safety control systems.*

(i) Proper use of the motor vehicle's safety system, including lights, horns, side and rear-view mirrors, proper mirror adjustments, fire extinguishers, symptoms of improper operation revealed through instruments, motor vehicle operation characteristics, and diagnosing malfunctions.

(ii) CMV drivers must have knowledge of the correct procedures needed to use these safety systems in an emergency situation, e.g., skids and loss of brakes.

(4) *Basic control.* The proper procedures for performing various basic maneuvers, including:

(i) Starting, warming up, and shutting down the engine;

(ii) Putting the vehicle in motion and stopping;

(iii) Backing in a straight line; and

    (iv) Turning the vehicle, e.g., basic rules, off tracking, right/left turns and right curves.

    (5) *Shifting.* The basic shifting rules and terms for common transmissions, including:

    (i) Key elements of shifting, e.g., controls, when to shift, and double clutching;

    (ii) Shift patterns and procedures; and

    (iii) Consequences of improper shifting.

    (6) *Backing.* The procedures and rules for various backing maneuvers, including:

    (i) Backing principles and rules; and

    (ii) Basic backing maneuvers, e.g., straight-line backing, and backing on a curved path.

    (7) *Visual search.* The importance of proper visual search, and proper visual search methods, including:

    (i) Seeing ahead and to the sides;

    (ii) Use of mirrors; and

    (iii) Seeing to the rear.

    (8) *Communication.* The principles and procedures for proper communications and the hazards of failure to signal properly, including:

    (i) Signaling intent, e.g., signaling when changing direction in traffic;

    (ii) Communicating presence, e.g., using horn or lights to signal presence; and

    (iii) Misuse of communications.

a. (9) *Speed management.* The importance of understanding the effects of speed, including:

    (i) Speed and stopping distance;

    (ii) Speed and surface conditions;

    (iii) Speed and the shape of the road;

    (iv) Speed and visibility; and

    (v) Speed and traffic flow.

    (10) *Space management.* The procedures and techniques for controlling the space around the vehicle, including:

      (i) The importance of space management;

      (ii) Space cushions, e.g., controlling space ahead/to the rear;

      (iii) Space to the sides; and

      (iv) Space for traffic gaps.

      (11) *Night operation.* Preparations and procedures for night driving, including:

      (i) Night driving factors, e.g., driver factors (vision, glare, fatigue, inexperience);

      (ii) Roadway factors (low illumination, variation in illumination, unfamiliarity with roads, other road users, especially drivers exhibiting erratic or improper driving); and

      (iii) Vehicle factors (headlights, auxiliary lights, turn signals, windshields and mirrors).

      (12) *Extreme driving conditions.* The basic information on operating in extreme driving conditions and the hazards encountered in such conditions, including:

      (i) Bad weather, e.g., snow, ice, sleet, high wind;

      (ii) Hot weather; and

      (iii) Mountain driving.

      (13) *Hazard perceptions.* The basic information on hazard perception and clues for recognition of hazards, including:

      (i) Road characteristics; and

      (ii) Road user activities.

      (14) *Emergency maneuvers.* The basic information concerning when and how to make emergency maneuvers, including:

      (i) Evasive steering;

      (ii) Emergency stop;

      (iii) Off road recovery;

      (iv) Brake failure; and

      (v) Blowouts.

(15) *Skid control and recovery.* The information on the causes and major types of skids, as well as the procedures for recovering from skids.

(16) *Relationship of cargo to vehicle control.* The principles and procedures for the proper handling of cargo, including:

(i) Consequences of improperly secured cargo, drivers' responsibilities, and Federal/State and local regulations;

(ii) Principles of weight distribution; and

(iii) Principles and methods of cargo securement.

(17) *Vehicle inspections.* The objectives and proper procedures for performing vehicle safety inspections, as follows:

(i) The importance of periodic inspection and repair to vehicle safety.

(ii) The effect of undiscovered malfunctions upon safety.

(iii) What safety-related parts to look for when inspecting vehicles, e.g., fluid leaks, interference with visibility, bad tires, wheel and rim defects, braking system defects, steering system defects, suspension system defects, exhaust system defects, coupling system defects, and cargo problems.

(iv) Pre-trip/enroute/post-trip inspection procedures.

(v) Reporting findings.

(18) *Hazardous materials.* Knowledge of the following:

(i) What constitutes hazardous material requiring an endorsement to transport;

(ii) Classes of hazardous materials;

(iii) Labeling/placarding requirements; and

(iv) Need for specialized training as a prerequisite to receiving the endorsement and transporting hazardous cargoes.

(19) *Mountain driving.* Practices that are important when driving upgrade and downgrade, including:

(i) Selecting a safe speed;

(ii) Selecting the right gear; and

(iii) Proper braking techniques.

(20) *Fatigue and awareness.* Practices that are important to staying alert and safe while driving, including;

(i) Being prepared to drive;

(ii) What to do when driving to avoid fatigue;

   (iii) What to do when sleepy while driving; and

   (iv) What to do when becoming ill while driving.

18. Plaintiffs charge and aver that one, some, or all aforesaid acts of common law negligence, violations of the Tennessee Code Annotated, Memphis City Ordinances and Federal Motor Carrier Safety Act rules and regulations by Defendant Orelus, were a direct and proximate cause of the wreck at issue and resulting in the wrongful death of Jose Villasenor.

## NEGLIGENCE- U.S. CARGO, INC.

19. Plaintiffs incorporate by reference the allegations contained in the above paragraphs as if set forth fully herein Pursuant to 49 CFR §§ 383.5, 390.5, Defendant, U.S. Cargo, Inc., is the statutory employer(s) of Defendant Orelus and is liable for her negligent acts or omissions.

20. The negligence of Defendant U.S. Cargo Inc.'s employee Defendant Ronald Orelus was a proximate cause of the subject crash and resulting the wrongful death of Jose Villasenor.

21. Defendant U.S. Cargo, Inc. negligently and carelessly hired, supervised and retained Defendant Ronald Orelus as a commercial motor vehicle operator.

22. Defendant U.S. Cargo, Inc. was negligent in failing to properly qualify Defendant Ronald Orelus pursuant to the Federal Motor Carrier Safety Act.

23. Defendant U.S. Cargo, Inc., was negligent in failing to properly train its employee, Ronald Orelus, on safe driving practices and safe operation of the commercial motor vehicle he was operating.

24. Defendant U.S. Cargo, Inc. aided and/or abetted Defendant Orelus in his negligent, careless, and reckless actions.

25. Defendant U.S. Cargo, Inc. was negligent in failing to use the degree of care and caution in the operation of a motor carrier as is required of a reasonable and prudent company

and/or owner under the same or similar circumstances existing at the time and place of the aforementioned collision.

26. The hereinabove described negligent, careless and reckless acts, omissions and failures of defendant U.S. Cargo, Inc., directly and proximately caused the subject wreck and the wrongful death of Jose Villasenor.

## DAMAGES

27. As a direct and proximate result of the concurrent negligent acts of Defendants, U.S. Cargo, Inc. and Ronald Orelus, Jose Villasenor suffered injuries and died.  Plaintiffs are entitled to recover damages in an amount to be assessed by the jury, including but not limited to the following:

   a. Funeral expenses;

   b. Medical expenses;

   c. Conscious pain and suffering;

   d. Loss of enjoyment of life;

   e. Loss of present net cash value of decedents' life expectancies;

   f. Loss of love, society, companionship, and consortium of the decedents;

   g. Loss of support;

   h. All other damages which the jury may determine to be just, taking into consideration all damages of every kind to the decedents and all damages of every kind to all the interested parties as allowed by law.

28. The aforesaid acts and omissions of Defendants Ronald Orelus and U.S. Cargo constitute willful, unlawful, reckless conduct and wanton disregard for the rights of the Plaintiffs and for other members of the public utilizing the highways and roads and/or constitute gross negligence and recklessness as to show a total lack of regard for the rights of Plaintiffs, and for

the other members of the public utilizing the highways and roads which entitles Plaintiffs to recover punitive and exemplary damages against U.S. Cargo, Inc. and Ronald Orelus in an amount to be assessed by the Court and/or jury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand a judgment of and from Defendants jointly and severally as follows all damages allowed by law in such an amount as the jury determines, together with all interest costs therein.

Dated: This the 10th day of April, 2023.

> **RESPECTFULLY SUBMITTED,**
> **EVA VILLASENOR**
> **INDIVIDUALLY AND ON BEHALF**
> **OF ALL WRONGFUL DEATH**
> **BENEFICIARIES OF JOSE VILLASENOR**
> **and EDWARD VILLASENOR,**
> **INDIVIDUALLY**
>
> By: /s/ Emily Smathers Ratliff
> Emily Smathers Ratliff (TN Bar #029894)
> Attorney for Plaintiffs
> Smathers Ratliff, PLLC
> 40B West Long Street
> Abbeville, Mississippi 38601
> Phone: 662-816-6965
> Email: emilyruth928@gmail.com
>
> /s/ William Roberts Wilson, III
> Wm. Roberts Wilson, III (MS Bar# 101194)
> Attorney for Plaintiffs
> Roberts Wilson, PA
> Post Office Box 2428
> Oxford, Mississippi 38655
> Phone: 662-533-9121
> Fax: 662-533-9112
> Email: roberts@wegetjustice.com

**PLAINTIFFS REQUEST TRIAL BY JURY**